**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

EDWARD ALLEN MOORE,       )
                                 )
     Petitioner,          )
                                 )
     vs.                   )     Case No. 1:21-CV-114 JSD
                                 )
BILL STANGE,  Warden of the     )
Southeast Correctional Center,     )
                                 )
and                               )
ANDREW BAILEY,  Attorney General   )
of the State of Missouri,         )
                                 )
     Respondents.        )

## MEMORANDUM AND ORDER

This matter is before the Court on Edward Allen Moore's ("Moore" or "Petitioner") petition for a writ of habeas corpus under 28 U.S.C. § 2254 by a person in state custody (ECF No. 1). Respondent Bill Stange ("Stange") and Andrew Bailey have filed a response (ECF No. 20). Moore filed a traverse (ECF No. 21). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I.     BACKGROUND

Moore is currently incarcerated at the Southeast Correctional Center. Respondent Bill Stange, Warden of the Southeast Correctional Center, is Moore's custodian and the proper respondent. 28 U.S.C. § 2254. Also, because Moore is challenging a future consecutive sentence, Andrew Bailey, the Attorney General of Missouri, is also a proper respondent. 28 U.S.C. § 2254. Rule 2(b).[1]

---

[1] The Court adds Andrew Bailey as a respondent.

1

In his habeas petition, Moore raises eight claims for relief: (1) Moore was denied effective assistance of counsel because of the "long-term, severe underfunding of the Missouri State Public Defender . . ."; (2) state law denied Moore resources because he was indigent and represented himself in violation of the Sixth and Fourteenth Amendments to the Constitution; (3) Moore was denied compulsory process for two City of St. Louis Justice Center inmates: (5) Moore was denied his right to confront William Erby with a prior inconsistent statement; (6) Moore was excluded from the first eight months of proceedings, denying him his right to counsel; (7) the state failed to produce material, exculpatory evidence; (8) the state knowingly used perjured testimony to convict Moore; and (9) the trial judge collaborated with the state to "doctor" the trial record to benefit the state on appeal.[2]

Respondent argues that only Moore's fifth ground for relief was properly preserved for federal habeas review. To the extent that ground two alleges that Moore was denied access to the Missouri Approved Jury Instructions, Respondent notes that claim was also denied by the Missouri Court of Appeals. Respondent maintains that Moore's remaining claims were all procedurally defaulted. (ECF No. 20 at 3)

The Missouri Court of Appeals summarized the pertinent facts in this case:

> On September 19, 2017, [Moore] was charged by indictment with four counts of assault in the first degree (Counts I, III, V, and VII) and four counts of armed criminal action (Counts II, IV, VI, and VIII) against Natasha Bell (Bell) (Counts I and II), Andrea Paterson (Paterson) (Counts III and IV), John Hampton (Hampton) (Counts V and VI), and William Erby (Erby) (Counts VII and VIII), for events occurring on or about July 22, 2017.

> A jury trial was held between June 5 and 8, 2018. Following the trial, wherein [Moore] chose to represent himself, [Moore] was found guilty as charged. Thereafter, the trial court sentenced [Moore] to 30 years' imprisonment for each of

---

[2] Moore's headings in the attachment to his Petition extend to nine grounds for relief but there is no ground four in the Petition filed with the Court. *See* ECF No. 1 at 31-32.  For clarity purposes, the Court utilizes the numbering from the Petition filed and omits any reference to ground four.

the eight counts, with Counts I, III, V, and VII to be served consecutively, for a total of 120 years' imprisonment.

[Moore] challenges the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial:

In July 2017, Hampton, Bell, Erby, and Paterson were staying together in a room inside an abandoned school [hereinafter "old Carr School"] in the City of St. Louis. Hampton and Bell were dating; Erby and Paterson were dating; Erby was "good friend[s]" with Hampton. [Moore], who was also staying in the school, was living in a tent in another room on the same floor.

On July 21, 2017, [Moore] got into a "heated" argument with Bell and Hampton after Bell and Paterson had gone into [Moore's] room and taken some of his food and other "stuff." All of the victims were present during the argument. Hampton testified that [Moore] confronted Bell and told her that he did not want her taking his "food and stuff." [Moore] also told Hampton that "he would have to go through [Hampton] to get to [Bell]." Hampton and Bell told [Moore] they would repay him when they received their food stamps. Hampton testified that he did not see [Moore] the rest of the day.

That night, Hampton, Bell, and Paterson were asleep in the room, but Erby was gone at work. Bell testified that she suddenly woke up to an "impact" and pain in her head and after looking up, saw [Moore] standing over her as she was lying on the mattress. Bell recognized the weapon in [Moore's] hand as a hammer. Bell testified that [Moore] was also holding a "bed rail" in his other hand. Bell testified that [Moore] struck her multiple times on her skull and also struck her jaw. Bell testified that she lost consciousness and the next thing she remembered was waking up in the hospital a few days later. Bell testified that her jaw and her skull were "shattered," that there were bone chips in her brain, and that she was scheduled to undergo "another major brain surgery" to replace the missing bone in her head with a false plate. Bell also had to have her mouth wired shut for two months because of the damage to her jawbone. Bell testified that she remained in the hospital for about a month and a half, and at the time of trial was in a nursing home.

Hampton testified that during the attack, he woke up to what seemed like Bell screaming. Hampton testified that he was hit in the temple area, but he did not see who hit him or with what. Hampton testified that he had not had any "arguments or fights" with anybody other than [Moore] around the time of the incident. Hampton testified that his skull was fractured in two places, he had a "severe hematoma," which was "very serious," and he was in the hospital for a week.

Erby testified that at around 6 a.m., he was returning to the school after getting off work. He testified he entered the room where the victims were sleeping; it was dark. Erby testified he did not hear Bell or Hampton, but then heard Paterson

screaming. Erby was then struck in the back of his head. After a second blow, Erby testified he turned around and saw [Moore] strike Paterson in the head. Erby testified that Paterson was screaming and bleeding, and Erby realized that [Moore] was going to hit her again. At this point, Erby stepped in between them and put his hand up to protect her, but [Moore] "clipped" Erby's hand with the hammer. Erby then yelled at Paterson to run, and she escaped from the building to a nearby shelter. Erby testified [Moore] then hit him multiple times with the hammer, and Erby tried to escape out the front door in order to "stay alive." [Moore] followed Erby out through the front door, and then hit Erby with a "pole" before running back inside the school. Erby testified he never lost consciousness throughout the incident. He testified it was [Moore] who "attacked everybody" and was able to identify [Moore] as the attacker from a photo lineup shown to him while he was in the hospital. Erby also identified [Moore] in the courtroom as his attacker. Erby testified that he received 35 staples and 28 stitches to his head, eight stitches in his right arm, eight or nine stitches in his toe, and that his chest had also been "ripped." Erby testified he had "severe head trauma" and that at the time of trial, which was almost a year after the attack, the injuries to his skull were still healing.

Officer Brandon Clark (Officer Clark) and Officer Kristen Chelucci (Officer Chelucci), who responded to the scene, testified they discovered Erby outside of the school, "drenched in blood" and bleeding from his head. Officer Chelucci testified that Erby described his attacker as a white male, who was approximately six foot to 6'2, 230 pounds, wearing blue jean shorts. Erby also informed police that there were other victims. At this point, the officers received a call reporting a female, a block away, with a head injury that was bleeding. Erby told police that more victims were inside the school. After entering the building, the officers testified they found Bell and Hampton, also with "[s]evere head injuries." The officers observed they had "deep wounds" and there was "blood everywhere," including on the blankets and pillow. The officers testified that Bell was "barely conscious" and could not speak, and Hampton was "slipping in and out of consciousness." A ball-peen hammer was seized from a grassy area at the rear of the school, and a long piece of handrail with apparent blood on it was seized from the room where the assault took place. Erby identified them as the hammer and piece of wood that [Moore] used to hit him, and Bell similarly identified the hammer.

All four victims were taken to the hospital. Hampton, Erby, and Paterson were determined to be in "critical stable" condition, while Bell was determined to be in "critical unstable" condition. [Moore] was not located at the scene. [Moore] was found sleeping on a dock nearby and arrested early the next morning.

Officer Chelucci testified she spoke to Paterson "face[-]to[-]face" and observed she had "some head injuries," was bleeding, was "pretty beat up," and had "knots" on her head like those of Erby. Police also spoke to Erby at the hospital and obtained a statement from him, which was admitted at trial and played for the

jury. The officer, who had also spoken to Paterson, similarly informed Erby that Paterson had a "head-wound injury," like Erby, but that she was going to be okay.

At the close of all evidence and argument by both parties, the jury found [Moore] guilty as charged. Thereafter, the trial court sentenced [Moore] to a total of 120 years' imprisonment.

(Missouri Court of Appeals March 16, 2021 Order, ECF No. 20-4 at 2-6).

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a [s]tate court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases

but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). To be sure, if a claim could have been raised earlier but was not, that claim is procedurally defaulted. *See* 28 U.S.C. §2254(e)(2)[3]; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez v. Ryan*, 566 U.S. 1 (2012) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim."). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

---

[3] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. §2254(e)(2).

III.    **DISCUSSION**

A.    **Procedural Default**

To expand further, under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn*, 596 U.S. at 371; *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citing *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011)) ("A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of a claim, thereby precluding consideration of federal claims on direct appeal."). When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." *Shinn*, 596 U.S. at 371. "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Franklin*, 879 F.3d at 311.

As stated, Respondent argues that only Moore's ground five was properly preserved for federal habeas review. (ECF No. 1 at 32). This Court agrees.

Moore never raised grounds one, two, and three in state court. Moore raised ground six during direct appeal, but his briefing was deficient on this claim so the Missouri Court of Appeals could not review it. (ECF No. 20-4 at 29-30) Therefore, ground six is defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal

ground for the decision could not affect the judgment and would therefore be advisory."); *Herb v. Pitcairn,* 324 U.S. 117, 125–126, (1945) ("We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion").

Moore asserts he raised grounds seven and eight in state court in a motion to remand filed in his appellate case. (ECF No. 1 at 42) However, a motion to remand is not the proper procedure for Moore to raise a *Brady* or *Giglio/Napue* claim and, as a result, these claims are defaulted. *See Duley v. State*, 304 S.W.3d 158, 162 (Mo. Ct. App. 2009) (petitioner must pursue the *Brady* claim during the direct appeal and or at the earliest opportunity to raise it).

Moore maintains that he raised ground nine in his direct appeal. The claim raised by Moore in his direct appeal deviates from the claim raised in his federal habeas petition. That is, in ground nine, Moore states he was "denied due process of law and a fair trial in violation of the Fourteenth Amendment to the United States Constitution by the trial judge's collaboration in the prosecution of [Moore] and doctoring of the trial record to benefit the State on appeal." (ECF No. 1 at 44) In his direct appeal, however, Moore claimed that the trial court "plainly erred in failing to recuse itself *sua sponte* because of apparent bias." (ECF No. 20-4 at 34 ("our review of the record does not support Appellant's assertion that the trial judge's actions rose to the level of bias or prejudice toward either party arising from an extrajudicial source.")) These are different claims and, even if they were not, ground nine is defaulted because Moore did not preserve it for direct appeal review. *See* ECF No. 20-4 at 34, n. 16 ("16 Appellant concedes he has not preserved this point for appellate review, and therefore requests plain error review. Plain errors affecting substantial rights may be considered at the court's discretion, when the court finds that 'manifest injustice or miscarriage of justice has resulted therefrom.' Rule 30.20."); *see also Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th

Cir. 2015) (the state court's discretionary plain-error review of a petitioner's unpreserved claims cannot excuse his procedural default).

The Court agrees and finds all of Moore's grounds for relief, except for Ground Five, are procedurally defaulted and not properly before this Court on habeas review.

**B.  Ground One**

In Ground One, Moore argues that the "long-term, severe underfunding of the Missouri State Public Defender" system denied him "the adequate, conflict-free counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution." (ECF No. 1 at 22)

As an initial matter, Moore admits he was unable to present this claim to a court vested with jurisdiction to decide this claim. (ECF No. 1 at 23) Thus, this claim is defaulted.

Even if this Court were to review this claim on the merits, it fails. The Eighth Circuit has already held that a blanket argument that the Missouri public defender system is overworking and unable to provide adequate representation is insufficient to support a claim for habeas relief: "The Missouri public defender system may well be under a great deal of stress. But there is no evidence that the alleged systematic failure of the public defender system affected the performance of [petitioner's] counsel." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). Indeed, Moore fails to "state specific, particularized facts which entitle him or her to habeas corpus relief" based upon allegedly insufficient assistance of counsel. *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990). The Court finds that Ground One is insufficient because Moore failed to show any specific facts to demonstrate that he was not adequately represented by any attorney.

In any event, Moore's ineffective assistance of counsel claim in Ground One fails because he represented himself at trial and he does not contend that his decision to proceed *pro se* was unknowing or involuntary. *See Faretta v. California*, 422 U.S. 806, 835 (1975) ("For this reason,

in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."); *McKaskle v. Wiggins*, 465 U.S. 168, 177, n. 8 (1984) (internal citation omitted) ("a defendant who exercises his right to appear *pro se* cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel."). Thus, the Court finds no support for a claim of ineffective assistance of counsel when Moore represented himself at trial. Ground One fails to demonstrate an unreasonable application of federal law or an unreasonable determination of the facts.

### C.  Ground Two

Moore asserts that state law denying resources to indigent criminal defendants who exercise their right to self-representation constitutes an unconstitutional condition in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Moore claims that he was denied resources to perform the following acts: (1) transcribe a recorded statement by William Erby to police; (2) an investigator to download all of Erby's prior inconsistent statements from the internet; (3) a private process server to serve a subpoena for footage of an interview Erby gave to Fox2News where Erby provides inconsistent statements; (4) an investigator to obtain authenticated copies of Erby's convictions for impeachment use at trial; (5) an investigator to obtain authenticated copies of Erby's then-pending criminal charges, which prevented Moore from showing Erby's potential motive for testifying favorably for the state; (6) DNA test on a 4-foot section of handrail, which prevented Moore from proving that Moore never handled the handrail contrary to Erby and Bell's testimonies; (7) DNA test on a hammer, which prevented Moore from proving that he never handled the hammer in contravention of Erby and Bell's testimonies; (8) a private process server to serve a subpoena for June 6, 2018 video of the St. Louis Criminal Justice Center's holdover area, which would have shown Moore did not threaten Erby; (9) an investigator

to obtain authenticated July 22, 2017 video from Hogan Trucking, Inc., which prevented Moore from disproving Erby's testimony that he was outside the old Carr School immediately prior to the assaults and disproving Erby's testimony that Erby and Moore emerged from the old Carr School while fighting on July 22, 2017; (10) an investigator to identify and locate the people in the park across the street from the old Carr School the morning of July 22, 2017, all of whom could have refuted Erby's testimony that he and Moore were fighting; (11) an investigator to identify and locate the 911 caller regarding Erby and Moore's fight on July 22, 2017; and (12) a deposition of Erby that would have allowed Moore to learn about Erby's allegedly perjured statements. (ECF No. 1 at 25-26) Moore claims that he tried to exhaust this claim but he was denied a forum in which to litigate. (ECF No. 1 at 30)

Initially, this claim is procedurally defaulted because Moore did not raise this ground in state court. In his direct appeal, Moore raised the issue that the trial court failed to make available a copy of the Missouri Approved Instructions (MAI) (ECF No. D at 10). To the extent that Moore raises that same issue in Ground Two, then this Court reviews that claim, affording the Missouri Court of Appeals' denial to deference pursuant to 28 U.S.C. §2254(d).

On direct appeal, the Missouri Court of Appeals held the following:

> In Point IV, [Moore] argues the trial court erred in allegedly failing to provide [Moore] with access to the Missouri Approved Instructions (MAI). We disagree. "There is no clear right for a pro se defendant to have access to a law library….The constitutional right at issue is meaningful access to the courts, which can be met by adequate law libraries for a pro se defendant, but also by other alternative means, including proffering assistance from available counsel." *Garth v. State*, 411 S.W.3d 366, 372 (Mo. App. E.D. 2013); *Chrisman v. State*, 288 S.W.3d 812, 819-20 (Mo. App. S.D. 2009). Here, contrary to [Moore's] assertion, the record shows [Moore] was provided with meaningful access to the courts when he was offered the assistance of court-appointed counsel, which he refused.
>
> As to [Moore's] claim that the trial court failed to provide him with the MAIs, thereby preventing him from both submitting proposed instructions and knowing what instructions he could request, this claim is belied by the record. After

extensive discussion at the instruction conference, the trial court relied on the prosecutor to provide [Moore] "courtesy copies of whatever instructions [he] was requesting." Following further discussion, the court asked [Moore] if he had any other instructions he wished to submit, and [Moore] replied, "No, Your Honor." As to [Moore's] claim he was prevented from knowing he could request certain instructions, he fails to explain how any alleged lack of access caused him any actual injury. Here, the record shows the trial court was willing to accommodate [Moore] in obtaining any instruction he requested, regardless of whether [Moore] was able to identify that instruction by number.

The trial court did not err in allegedly failing to provide [Moore] with access to the MAIs, and further, [Moore] failed to establish he was prejudiced as a result. Point IV is denied.

(ECF No. 20-4 at 10-11)

The Court presumes that the state court's factual determination that Moore was provided meaningful access to the courts was correct. *Nicklasson v. Roper*, 491 F.3d 830, 841 (8th Cir. 2007) (quoting *Purkett v. Elem,* 514 U.S. 765, 769 (1995) ("In federal habeas review, the factual findings of state courts … 'are presumed to be correct, and may be set aside, absent procedural error, ... only if they are not fairly supported by the record.'"); *see also* 28 U.S.C. § 2254(e). The Court finds that the Missouri Court of Appeals reasonably found that was afforded meaningful access when it offered the assistance of counsel in requesting instructions as well as courtesy copies of any and all instructions. *See Bounds v. Smith*, 430 U.S. 817, 828,(1977) ("We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."). For the same reason, the Court holds that Moore is not entitled to relief

based upon the denial of any other resources, in addition to access to the MAIs. *See, e.g., United States v. Willson*, 62 F. App'x 740, 742 (8th Cir. 2003) ("The court also did not abuse its discretion in refusing to pay for an investigator to find and serve Mr. Willson's witnesses, or to grant Mr. Willson more time to serve the witnesses himself, given Mr. Willson's refusal to enlist the help of Mr. Parrish—who remained available to assist him on request—and the length of time Mr. Willson had had to find and serve the witnesses."). Thus, the Court holds that the Missouri Court of Appeals did not unreasonably apply federal law nor was the decision of the Missouri Court of Appeals unreasonable in light of the evidence. Ground Two fails to show and unreasonable application of federal law or of the facts to state law.

### D.  Ground Three

In Ground Three, Moore asserts he was arbitrarily denied compulsory process for two City of St. Louis Criminal Justice Center inmates in violation of the compulsory process clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Moore claims that Michael Jordon and Cornelious Critten were both present in the court holdover area of the jail on June 6, 2018 and would have refuted Erby's testimony that Moore threatened him. (ECF No. 1 at 31)

Notably, Ground Three is defaulted because it was not raised in state court. Nevertheless, this claim fails on the merits. The record does not reflect that Moore actually requested any writs to compel the testimony of Jordon and Critten, so the record does not reflect that the trial court failed to take action on his request. Instead, the record reflects that Moore told the trial court he requested subpoenas for Jordon and Critten and requested a continuance for the subpoenas to be served. (ECF No. 20 at 14; ECF No. 20-5 at 509-10) The trial court denied Moore's request for a

continuance on June 6, 2018, because he had not served the subpoenas and it was time to begin Moore's case. (ECF No. 20-5 at 510)

Under Missouri law, "[a]n application for continuance of a criminal case is addressed to the discretion of the trial court." *State v. Reece*, 505 S.W.2d 50, 52 (Mo. 1974). Further, "a conviction will not be set aside unless it is reasonably probable that a different result would have obtained if the absent witnesses had testified." *Id*. Further, the Eighth Circuit has held that "the right to compulsory process is not absolute." *United States v. Tran*, 16 F.3d 897, 906 (8th Cir. 1994). That is, "to be entitled to compulsory process, the defendant must demonstrate that a witness' 'testimony would have been both material and favorable to his [or her] defense.'" *Tran*, 16 F.3d at 906 (citing *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 (1982)).

Here, the purported testimony of Jordon and Critten is not sufficient to require compulsory process. At most, they would have testified that they were present in the court holdover area of the jail on June 6, 2018 and that Moore that did not threaten Erby. Moore cannot show that the result would have been different on the charges against him based upon this non-material testimony. As a result, the Court finds no basis for relief under Ground Three. The Court holds that the Missouri Court of Appeal's analysis and application of state discovery law was reasonable and not contrary to clearly established federal law.

### E.  Ground Five

In Ground Five, Moore claims he was denied the right to confront prosecution witness Erby with his prior inconsistent statement to Fox2News in violation of the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 1 at 32) Fox2News interviewed Erby, where he claims he fended off

14

multiple assailants on July 22, 2017. Moore states that the trial court prohibited him from inquiring of Erby regarding his prior inconsistent statements from that interview. *Id*. Moore included this claim in his motion to remand.

The Missouri Court of Appeals addressed this issue:

[Moore] argues the trial [court] abused its discretion in sustaining an objection to [Moore's] inquiry regarding Erby's prior news interview.  However, [Moore] failed to show that it was inconsistent with Erby's trial testimony, nor has [Moore] shown he was prejudiced as a result. Therefore, we find no abuse of discretion.

"We review the trial court's decision to exclude the evidence offered by defense counsel for abuse of discretion." *State v. Tolen*, 295 S.W.3d 883, 889 (Mo. App. E.D. 2009). "Prior statements may be used to impeach the credibility of a witness only if the judge is satisfied that the prior statements are, in fact, inconsistent." *Id*. "Absent the threshold showing of an inconsistency between the testimony and the [prior] statements…use of the [prior statements] to impeach is questionable." *Id*. at 889-90.

Here, during cross-examination, Erby stated he had given an interview for Fox 2 News and the prosecutor then objected on the basis of relevance. When the trial court asked [Moore] how the subject of Erby's news interview was relevant, following the prosecutor's objection, [Moore] answered, "Prior inconsistent statement," but he failed to cite any specific statements that would establish the inconsistency. The trial court further commented that it had not seen the interview and therefore could not "know if it's inconsistent or not." [Moore] thus failed to make the threshold showing that any of Erby's statements during his Fox 2 news interview were inconsistent with his trial testimony. Moreover, [Moore] never asked Erby about any specific statements he allegedly made during the news interview or gave him the opportunity to explain any inconsistency. And further, nothing in the record indicates [Moore] attempted to make an offer of proof with Erby outside the presence of the jury, as the trial court suggested.

Finally, [Moore] failed to show how he was prejudiced by the trial court's ruling. At trial, [Moore] impeached Erby with other allegedly prior inconsistent statements, including statements contained in the recorded statement to police. Having impeached Erby's credibility, [Moore] has failed to show how the news interview would have made any difference in the jury's determination.

The trial court did not abuse its discretion in excluding the interview.

(ECF No. 20-4 at 21-22). Admissibility of evidence is a state law issue and not proper for federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted) ("federal habeas corpus relief does not lie for errors of state law."). Although Moore claims that he was denied his right to confront and cross-examine him, Erby was present and testified at trial. *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (internal citation omitted) ("The Sixth Amendment, we concluded, prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is unavailable to testify, and the defendant had had a prior opportunity for cross-examination.") Indeed, Moore was only precluded from asking Erby about his news interview because Moore could not demonstrate the line of questioning was relevant, that the proposed testimony was indeed inconsistent, and the purported evidence was admissible as an inconsistent statement. The Court holds that the Missouri Court of Appeal's analysis and application of state law regarding admissibility of evidence was reasonable and not contrary to clearly established federal law.

Additionally, even if Moore's claim that the state evidentiary ruling was in error, the Court "must emphasize that not every trial error amounts to a constitutional deprivation." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). The Court "will reverse a state court evidentiary ruling only if the 'petitioner ... show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Anderson*, 44 F.3d at 679 (*Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987)(citations omitted)). Moore has not shown how the refusal to allow questioning regarding an interview, which Moore admittedly has never seen and did not know the contents of, would have impacted the outcome of his trial. For this reason as well, the Court finds no unreasonable

16

interpretation of federal law, no unreasonable application of facts to state law, and, therefore, no basis for federal habeas relief as to Count Five.

### F. Ground Six

In Ground Six, Moore asserts that he was excluded from the first eight months of "the proceedings", which denied him of his right to counsel in violation of the Counsel Clause of the Sixth Amendment and of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (ECF No. 1 at 32) Moore claims that his pretrial motions were ignored and he was not included in any of the trial court proceedings for the first eight months, until he sought a writ of mandamus from the Missouri Court of Appeals. *Id.*

This claim is procedurally defaulted. Moore litigated this claim in his direct appeal but did not properly brief it. As a result, the Missouri Court of Appeals could not properly review the claim, which was brought as "Point XVI":

> In Point XVI, Appellant argues the trial court erred in "excluding" him from pretrial proceedings and that "[e]xcept for arraignment, [he] was excluded from the case from July 23, 2017[,] until May 18, 2018," thereby depriving Appellant of his alleged constitutional or statutory right to be present at pretrial proceedings.
>
> Here, Appellant does not cite any factual support in the record to support his claim, as  required by Rule 84.04(e); therefore, we are prevented from finding the trial court erred as alleged. "References to the record on appeal in the argument portion of the brief provides [reviewing authority] the tool with which to verify the accuracy of the factual assertions in the argument upon which a party relies to support its argument." *State v. Hardin*, 229 S.W.3d 211, 215 (Mo. App. W.D. 2007). "Compliance with this subpart of the rule is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record." *Id.* Moreover, a reviewing authority may not become an advocate for the non-complying party on appeal. *Id.* While we are mindful of the difficulties that pro se defendants encounter in complying with the rules of procedure, we cannot grant a pro se defendant preferential treatment. *Id.* Point XVI is denied.

(ECF No. 20-4 at 29-30) Thus, the Court holds that this claim is procedurally barred from review.

Even on the merits, however, Moore's Ground Six claim fails. Moore generally states that his "pretrial motions were ignored and he was provided insufficient discovery, but he does not provide support for these contentions. (ECF No. 1 at 33) Rather, the undisputed record demonstrates that the trial court afforded Moore lengthy and in-depth opportunities to present his arguments to the court and to ensure that he was provided discovery. (ECF No. 20-5 at 6-160). The Court holds that the Missouri Court of Appeals' analysis and application of state law regarding discovery was reasonable and not contrary to clearly established federal law. Therefore, the Court denies Ground Six.

## G. Ground Seven

In Ground Seven, Moore maintains he was denied due process of law and a fair trial in violation of the Fourteenth Amendment to the United States Constitution because the prosecution failed to produce material, exculpatory evidence. (ECF No. 1 at 34) Moore claims he served the prosecution with a motion for discovery seeking "material exculpatory evidence within the purview of Rule 25.03" but the information was not provided. (ECF No. 1 at 34-38) That is, Moore argues that the state failed to provide "authenticated" copies of Erby's pending criminal charges, Erby's prior convictions, Erby's property inventory from July 22, 2017, Erby's income tax records, Erby's brother's criminal record, Erby's sister-in-law's criminal record, Erby's niece's custody records, DNA profiles from swabs of a hammer, DNA profiles from a swab of a handrail, Erby's "Biddle House" record, a "Hogan Trucking" video, and a St. Louis City Jail video. (ECF No. 1 at 35-37)

Initially, this claims is procedurally defaulted. Moore acknowledges filing a "motion to remand" in the Missouri Court of Appeals, but a motion to remand does not exhaust his claim.

18

In addition, this claim fails on the merits. "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (citing Brady, 373 U.S. 83, 87 (1963)). "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 104 (1976).

Although Moore provides a long list of evidence that he wanted "authenticated", he does not provide any detail as to how such authentication should have occurred or if the evidence existed. Absent Moore showing the existence of these records, the Court cannot find that the state did not satisfy its discovery obligations.

Further, the trial court record demonstrates that Moore was aware of and cross-examined Erby regarding his pending and charges and prior criminal history. (ECF No. 20-5 at 377-443) The Court notes that records related to the criminal histories of Erby's relatives would not have been discoverable or admissible at Moore's trial and, therefore, not material under *Brady*. See Mo. Rev. Stat. §491.050 ("Any person who has been convicted of a crime is, notwithstanding, *a competent witness*; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case." (emphasis added)); *see also State v. Moore*, 411 S.W.3d 848, 853 (Mo. Ct. App. 2013) ("Besides prior 'criminal convictions,' the criminal histories and other background information of State witnesses are not discoverable for purposes of impeachment under Rule 25.03 without a showing of reasonableness and materiality, pursuant to Rule 25.04.").

As to the DNA records, the Court finds no evidence that such DNA records existed. Moore cross-examined Douglas Eatherton, St. Louis Metropolitan Police Department crime lab detective, regarding the laboratory swab reports. (ECF No. 20-5 at 474-79) On cross-examination, Eatherton testified that no DNA tests were performed on these swabs. *Id*. at 500.

Similarly, Moore asserts that the state failed to disclose the medical records from three of the victims. (ECF No. 1 at 34) Moore provides no proof that these medical records contain exculpatory information. Rather, medical information relevant to the charges against Moore was produced only because it demonstrated the extent of their injuries: one victim had a cracked skull (ECF No. 20-5 at 371), another victim had 35 staples and 28 stitches in his head (*id*. at 395), another victim was unconscious for a few days and suffered significant blood loss (*id*. at 519), and a fourth victim had "blood coming out" of her head (*id*. at 392-93, 411, 454-55). The Court finds the trial court acted reasonably in not providing only this medical information to Moore and was not contrary to clearly established federal law.

 Moore further maintains that the state should have disclosed the identities of the staff and inmates form the St. Louis City Jail who were present on June 6, 2018 when Moore threatened Erby. (ECF No. 1 at 37) Moore, however, was present during this incident, which occurred during his trial, so he would have been aware of the staff and inmates present at the time.

Finally, Moore contends that the state did not disclose the people across the street from the old Carr School who could testify that Erby was not present prior to the assaults and did not identify the 911 caller who could testify that Erby was alone when he came from the old Carr School. (ECF No. 1 at 37-38) Importantly, Moore has not shown that he or the state knew the identities of any people across the street from the old Carr School. As to the 911 call, Moore had the 911 call

recordings prior to trial and Moore indicated that he needed to subpoena the caller. (ECF No. 20-5 at 129-30) Moore, however, declined the Court's suggestion to request a continuance to subpoena the caller. *Id*.

In sum, as to all alleged records, Moore does not establish that the state possessed or should have possessed any of the other alleged records, or that these records would have a reasonable probability of producing a different result during Moore's trial. The Court holds that the trial court's analysis and application of state law regarding evidence was reasonable and not contrary to clearly established federal law.

### H. Ground Eight

In Ground Eight, Moore states he was denied due process and a fair trial in violation of the Fourteenth Amendment to the United States Constitution because the prosecutor knowingly used perjured testimony of Erby, Bell, police officer Kristin Chellucci, and police officer Brandon Clarke at trial. (ECF No. 1 at 39-42) Moore claims that there is a reasonably likelihood he would have been acquitted if the prosecutor had not presented these perjured testimonies. (ECF No. 1 at 42).

As previously discussed, his claim is procedurally defaulted and fails on that basis alone. Moore raised this issue on an improper motion to remand in his appellate case.

As to the merits, "[t]o establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that '(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict.'" *United States v.*

21

*Bass*, 478 F.3d 948, 951 (8th Cir. 2007) (citing *United States v. Funchess,* 422 F.3d 698, 701 (8th Cir. 2005)). Moore, however, does not establish any of these elements. Moore argues that Erby's statements were perjured (ECF No. 1 at 39-40) but fails to provide support as to the falsity of his statements. Further, the false statements allegedly made by Erby were not material to the facts of the crime and would not have resulted in a different verdict.

Likewise, Moore claims that Natasha Bell's testimony identifying him as the perpetrator were false. (ECF No. 1 at 41) He also maintains that police officers lied when they testified that the victims were in critical condition. (*Id*. at 41-42) Again, Moore does not substantiate these arguments with facts or evidence. As Moore does not support his contention that prosectuors knowingly used perjured testimony to support his conviction, Moore has not presented a claim that was contrary to the evidence or federal law, and Ground Eight fails.

## I. Ground Nine

Finally, in Ground Nine, Moore claims he was denied due process of law and a fair trail in violation of the Fourteenth Amendment of the Constitution because the trial judge collaborated with the prosecution in doctoring the trial record to the benefit of the state on appeal. (ECF No. 1 at 44) Moore asserts that the trial judge tried to convince him to omit certain arguments from the trial record, thereby making his appeal incomplete.

Ground Nine, however, is procedurally defaulted and unavailable for habeas review. As previously stated, Moore argued in state court appellate review that the trial court plainly erred by failing to recuse, which is a different cause of action. Even if it was the same cause of action, Moore did not preserve this issue for direct appeal review. *See Clark v. Bertsch*, 780 F.3d 873, 877

(8th Cir. 2015) ("state court's discretionary plain-error review of Clark's unpreserved claims cannot excuse his procedural default").

Even if this Court could consider Ground Nine, the record belies Moore's argument. To the contrary, the Court reprimanded the state and indicated that it would be "looking at sanctions" if the prosecution had not disclosed all relevant discovery. *See* January 10, 2020 trial transcript, ECF No. 20-5 at 6-12. "It is presumed that a judge acts with honesty and integrity and will not preside over a hearing in which the judge cannot be impartial." *Anderson v. State*, 402 S.W.3d 86, 92 (Mo. 2013) (citing *Worthington v. State*, 166 S.W.3d 566, 579 (Mo. 2005)). Moore has provided no evidence, other than his own speculation, to rebut the presumption that the trial court acted with integrity and propriety. Therefore, the Court denies Ground Nine as Moore has not demonstrated that application of state law regarding evidence was unreasonable or contrary to clearly established federal law.

## IV.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Edward Allen Moore for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that, because Moore is challenging a future consecutive sentence, Andrew Bailey, the Attorney General of Missouri, is added as a proper respondent. 28 U.S.C. § 2254. Rule 2(b)

Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment of Dismissal in accord with this Order is entered on this same date.

**IT IS FINALLY ORDERED** that Petitioner's Motion to Defer Ruling on Certificate of Appealability (ECF No. 53) is **DENIED**.

Dated this 4th day of November, 2024.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE